FOURTH DEPARTMENT, JANUARY, 1959

(January 7, 1959)

ALBERT C. STENGEL, Respondent, v. LOUIS' CAFETERIA, INC., Appellant.

WILLIAMS, J. (dissenting). In this negligence action, the plaintiff has recovered a verdict against the defendant because of injuries which he sustained when he fell in the defendant's cafeteria. This court is about to affirm the judgment. I must dissent from such affirmance and vote to reverse the judgment and to dismiss the complaint.

A description of certain physical characteristics is necessary to a complete understanding of the case. There was a dining area in a portion of this cafeteria eight inches below the level of the remaining floor. The accident occurred at a step leading down to this lower area. Along the edge of the upper level was what is described as a planter, which is a semi-partition 3 feet high and 10 inches wide with small plants on top. This partition extended to a clearly visible and well-defined four feet eight-inch entrance to the lower level. This entrance and the step were framed by the end of the planter and a flange therefrom which extended an additional 10 inches along the step and into the lower level. There was a corresponding structure on the opposite side. Thus, on each side there was wooden panelling of about 20 inches, partially on the upper level and partially on the lower. These panels were dark and contrasted clearly with the color of the floor and of the step itself, throwing the step into sharp relief. They appeared somewhat in the nature of railings for the step. At the foot of the step was a black mat which also contrasted distinctly from the light mottled color of the floor and step.

On the day in question, the plaintiff and his wife, who were strangers to this cafeteria, entered, selected food and after leaving the cashier's desk, proceeded to a table for two on the upper level immediately adjacent to the planter and near the entrance to the lower dining level. Plaintiff rested their tray on the back of the chair nearer the step and removed its contents to the table.

The plaintiff's version of what followed is amazing and unusual. He was six feet two inches tall and about 60 years old. It is his contention that he did not see this step or notice the entrance, although he followed his wife a distance of about 20 feet from the cashier's desk almost directly on a line with this step and then stood next to and close to the end of the planter. After he had cleared the tray, he made a most unusual maneuver which he described as an "about face" counter-clockwise on the ball of his right foot with his left foot in the air. This, he said, was done so that he might put the tray on a rack across the entrance, although he claimed that he had made no observations up to that point. He said that after this turn, his left foot landed on the edge of the step and slipped off as he started to step out. In order to do this, he had to make more than a full half turn because the edge of the step was 10 inches away from his side of the planter. In other words, he would have had to accomplish a complete 180-degree turn and also swung his left foot more than an additional 10 inches to his left while holding a tray in both

hands. This, in itself, was a difficult, if not a physically impossible feat. Just why he did this is not explained.

One of plaintiff's claims of negligence is that the table and chairs were too close to the step. Regardless of certain estimates as to the distance of the chair and table from the step, it is clear from his own testimony that his chair was sufficiently far away from the edge of the planter so that, as he stood behind the chair clearing the tray, his arm was against the side of the planter.

When he was asked about what observations he had made, he admitted that he blindly followed his wife from the cashier's desk to the table and observed nothing although he was walking directly toward the entrance and step. He said that as he came up to the table he did not look toward the entrance because, "I didn't think it was advisable." He also said that he observed nothing as he made his turn and was about to start toward the tray rack.

He was cross-examined at length and gave varying statements in a futile effort to explain why he did not look and why he did not see where he was going. He was asked, "Did you look in any direction, Mr. Stengel? and he answered, "No." And also, finally, "Q. * * * Mr. Stengel, there isn't any doubt in your mind that at no time as you progressed from the cashier to your table and until you made this fatal step did you look to see where you were going or look to see what was ahead of you or look to see what was beside you or look to see where you were putting your feet? * * * A. I did not."

The total of plaintiff's entire testimony is that he never at any time exercised any care whatsoever for his own safety. As a matter of fact, after carefully analyzing plaintiff's testimony, I am of the opinion that it is unbelievable as a matter of law, but that, even if it could be considered believable, it would then prove conclusively that there was only one cause of this accident, and that was the negligence of the plaintiff himself.

The liability of operators of places of business to which the public is invited has been discussed frequently by the courts of this State, and of course the general rule is that a storekeeper or, in this case the cafeteria owner, owes only a duty of reasonable care to protect his customers from inherently dangerous conditions or those that might be considered in the nature of a trap. A step such as this in a well-lighted room in plain view, with all the surrounding circumstances obviously pointing to the fact that there was a change of elevation, is not such a condition as would expose plaintiff to danger, but is merely a common ordinary usage of physicial facilities for normal purposes (Powers v. Montgomery Ward & Co., 251 App. Div. 120, affd. 276 N. Y. 600). Structural situations of this kind are not unusual and are often found in stores or restaurants, either because of practical necessity or for decorative purposes.

The only proof in the record shows that there was a step and that plaintiff fell. This creates no presumption of negligence (Kipp v. Woolworth Co., 150 App. Div. 283, appeal dismissed 206 N. Y. 628). There is no proof that the room was not well lighted, or that the entrance and step were difficult to see or misleading or dangerous in any way. The exhibits show very clearly that not only was this step plainly visible but that, with any degree of care, it should have been seen by plaintiff as he approached the table, as he cleared his tray, as he turned, and as he stepped forword. In fact, it would have been extremely difficult to overlook the physical situation, especially as he had observed the tray rack across the entrance from his table.

The proof that is necessary to establish and sustain a recovery is completely lacking in this case (Miller v. Gimbel Bros., 262 N. Y. 107). Other cases along similar lines are: Mona v. Erion (223 App. Div. 526, appeal dismissed 250

N. Y. 572); *Weller* v. *Consolidated Gas Co.* (198 N. Y. 98); *Cook* v. *Great Atlantic & Pacific Tea Co.* (244 App. Div. 63, affd. 268 N. Y. 599) and *Belsky* v. *Fourteenth St. Store* (121 N. Y. S. 321).

In the recent case of *Brooks* v. *Bergdorf-Goodman Co.* (5 A D 2d 162) the plaintiff fell in defendant's store as she was proceeding through a wide archway where there were two steps descending to a lower level. The colorings of the upper and lower levels were contrasting and there was a two-inch-wide orange line at the approach to the steps on the upper level. The plaintiff testified that at the time she fell she was looking straight ahead and did not observe the steps, although she admitted noting the archway and the fact that the flooring on the top level was of large tile boxes which came to an end and that beyond that there was carpeting, but she said she did not notice the difference in level. There was the additional factor claimed by plaintiff that the premises created an optical situation whereby the steps were rendered nonapparent and difficult to ascertain. The court said (p. 163) : " We think the evidence in this case fails to establish negligence on the part of defendant. The only theory on which negligence could possibly be found is that these steps leading from the tiled upper level to the carpeted area below constituted a trap or dangerous condition of which defendant failed to give adequate warning. The testimony and photographic evidence fail to support such a finding. * * * The physical layout of the two floors was such that had plaintiff been the least bit observant or attentive to where she was going, she would have noticed that the carpeted area, which she admittedly observed, was on a lower level."

The court concluded: " Assuming as claimed, that plaintiff's fall was the result of her failure to observe the steps, then we think on this record that such failure could not have resulted from any ' optical confusion' but was caused entirely by plaintiff's own carelessness. In the circumstances we hold that plaintiff has not made out a case of negligence against the defendant and that she was guilty of contributory negligence as a matter of law."

The complaint was dismissed.

The *Brooks* case is very similar to the present case. There is the contrasting floor coloring in each case; there is the archway in the *Brooks* case and the entrance in the present case, each easily discernible; and, most important of all, there is the complete lack of observation in each case, which the court in the *Brooks* case found to have been the sole cause of the accident without any negligence on the part of the defendant.

The plaintiff relies heavily upon *Tehan* v. *Freed* (287 N. Y. 806). That case is easily distinguishable. The plaintiff was walking along a floor in the defendant's store and looking at a hat display behind a counter. As she moved sideways examining the hats, she fell down two steps. The Appellate Division reversed a judgment for the plaintiff and dismissed the complaint (261 App. Div. 969), but the Court of Appeals reversed and directed a new trial. The display behind the counter was designed and intended to attract the plaintiff's attention as she walked along the floor and the plaintiff was doing exactly what the store wanted her to do. There is no such situation in this present case.

During the trial the plaintiff offered to bring in a construction engineer to prove that after the cafeteria had been constructed and furnished, but before it was open for business, the engineer advised an officer of the defendant that the step constituted a dangerous condition and should be corrected. Plaintiff's attorney also stated that he expected to prove that the opinion of the engineer was predicated on the position of the table. The offer was

vague, general and indefinite, and the Trial Justice properly ruled that this was not a matter of expert testimony. This offer was to prove a statement made to the defendant by this engineer. Not only was the form of the proof offered incorrect but the proof in itself was improper (*Clark* v. *Iceland S. S. Co.*, 6 A D 2d 544).

I do not believe that anything would be accomplished by granting a new trial because whatever additional proof the plaintiff might be able to produce in relation to his claim of negligence on the part of the defendant, it would still appear, from testimony heretofore given by plaintiff and from which he could not escape, that the accident was due, at least in part, to his own negligence.

For these reasons, I recommend reversal and dismissal of the complaint.

All concur, except Williams, and Goldman, JJ., who dissent and vote for reversal and dismissal of the complaint, in an opinion by Williams, J., in which Goldman, J., concurs. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.